```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

PATRICIA CEFALU                              CIVIL ACTION

VERSUS                                       NO: 12-1380

TANGIPAHOA PARISH SCHOOL BOARD               SECTION: J

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment **(Rec. Doc. 27)**, Plaintiff's Opposition **(Rec. Doc. 28)**, Defendant's Reply **(Rec. Doc. 31)**. and Plaintiff's Surreply **(Rec. Doc. 34)**. Defendant's motion was set for hearing on the briefs on August 28, 2013. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for reasons expressed below, that Defendant's motion should be **GRANTED.**

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, Ms. Cefalu, has been employed as a teacher with the Tangipahoa Parish School Board (TPSB) for approximately twenty-four years, and she continues to be employed in that capacity today. (Pl.'s Opp., Rec. Doc. 28, p. 2; Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 3-4). Plaintiff has historically taught chemistry, physics, and physical science at Hammond High Magnet School ("Hammond High"). (Pl.'s Opp., Rec. Doc. 28, p. 2). However, Plaintiff is also certified to teach biology, and her employment contracts with TPSB have consistently stated

1

that she has this certification. (Def.'s Reply, Rec. Doc. 31, SB Exh. "2"). Plaintiff's employment contracts have also consistently included the following language directly beneath the listing of the subjects that Plaintiff is certified to teach: "[I]t is understood and agreed that TPSB reserves the right to change the school assignment, grade, or subject taught, if circumstances necessitate, prior to the opening of the school year or during the school session." (Def.'s Reply, Rec. Doc. 31, SB Exh. "2").

On March 4, 2010, in *Moore v . Tangipahoa Parish School Board*, the Honorable Judge Ivan R. Lemelle ordered that TPSB reconstitute the staff at Hammond High as part of a desegregation plan for Tangipahoa Parish schools. (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 1-2). Judge Lemelle ordered that TPSB declare all positions at Hammond High vacant and then refill those positions. (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 1-2). Additionally, Judge Lemelle ordered that any Hammond High staff members who were not reassigned to Hammond High would retain their employment by TPSB and be reassigned to other schools. (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 1-2).

In response to this order, TPSB vacated all positions at Hammond High and required all employees to interview and be evaluated for reassignment. (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 2-3). The evaluation team

constituted of five individuals, three of whom were responsible for conducting interviews. (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 2-3). The evaluation team gave each employee two scores: one score based on responses to interview questions, and the other score pursuant to an objective rubric. (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 2-3). Each employee's two scores were added together, and the total score was then compared to the total scores of other employees. (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 2-3). Out of a total possible score of 520 points, Plaintiff received a total score of 300 points. (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 3).

TPSB reassigned Plaintiff to Ponchatoula High School ("Ponchatoula High") to teach biology instead of keeping her at Hammond High as a chemistry and physics teacher. (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 3; Pl.'s Compl., Rec. Doc. 1, p. 1-2, ¶ 6). It is uncontested that "Plaintiff was assigned to Ponchatoula High School, as a teacher, receiving the same salary and benefits and under the same contractual arrangement," and that "Plaintiff's salary and benefits were continuous as her employment was never interrupted." (Def.'s Stat. of Uncont. Mat. Facts, Rec. Doc. 27-6, p. 2, ¶¶ 11-12; Pl.'s Stat. of Cont. Mat. Facts, Rec. Doc. 28-10, p. 2). Plaintiff was sixty-two years old when she was reassigned to Ponchatoula High.

3

(Pl.'s Compl., Rec. Doc. 1, p. 1-2, ¶ 6). On May 5, 2012, Plaintiff filed suit, alleging that TPSB violated the Age Discrimination in Employment Act (ADEA) - specifically, 29 U.S.C. § 623(a). (Pl.'s Compl., Rec. Doc. 1, p. 2-3, ¶ 12).

## PARTIES' ARGUMENTS

Plaintiff makes two arguments: a disparate treatment argument based on 29 U.S.C. § 623(a)(1), and a disparate impact argument based on 29 U.S.C. § 623(a)(2). (Pl.'s Compl., Rec. Doc. 1, p. 2-3, ¶ 12; Pl.'s Opp., Rec. Doc. 28, p. 9-17).

### A. Disparate Treatment

Plaintiff contends that TPSB violated 29 U.S.C. § 623(a)(1), the ADEA provision pertaining to disparate treatment. (Pl.'s Compl., Rec. Doc. 1, p. 2-3, ¶ 12; Pl.'s Opp., Rec. Doc. 28, p. 9-17). In TPSB's motion for summary judgment, TPSB argues: (1) that Plaintiff has failed to establish a prima facie case of discrimination under the ADEA, and (2) in the alternative, if Plaintiff has established a prima facie case, TPSB has shown a legitimate, non-discriminatory, and non-pretextual reason for its action. (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 4). TPSB argues that in either case, Plaintiff's claims should be dismissed. (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 4). Specifically, TPSB argues that Plaintiff has failed to bring evidence that she suffered an adverse employment action, a requirement of her prima facie case regarding

4

disparate treatment, because no change has been made that "makes [Plaintiff's] job objectively worse" and because Plaintiff's reassignment to Ponchatoula High was a purely lateral transfer that does not constitute an adverse employment action. (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 6-7). According to TPSB, Plaintiff's transfer involved "no reduction in pay and no more than a minor change in working conditions, i.e. she was simply moved to a different location, performing the same job at the same rate of pay with the same benefits." (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 7).

Plaintiff argues that the transfer did constitute an adverse employment action because it "*significantly affected [her] job duties*, primarily because [she] had not taught a full-year biology course in over 25 years." (Pl.'s Opp., Rec. Doc. 28, p. 4) (emphasis in original). TPSB points out that Plaintiff taught biology at Hammond High during the year immediately proceeding the transfer, that Plaintiff has maintained her certification in biology throughout the years, and that biology is one of the teaching subjects identified in her employment contract. (Def.'s Memo. in Support of Mtn. for Summ. Judg., Rec. Doc. 27-1, p. 7-8). Plaintiff counters by arguing that she "taught biology only a month or so during the spring of 2011, and not for approximately 25 years before that." (Pl.'s Opp., Rec. Doc. 28, p. 4-5).

**B. Disparate Impact**

Plaintiff also contends that TPSB violated 29 U.S.C. § 623(a)(2), the ADEA provision pertaining to disparate impact. (Pl.'s Compl., Rec. Doc. 1, p. 2-3, ¶ 12; Pl.'s Opp., Rec. Doc. 28, p. 9-17). Plaintiff argues that she can meet her burden to show a statistical disparity between TPSB's treatment of younger workers and its treatment of older workers:

> The statistical disparity is that as of January 1, 2011, ... the average age of faculty at [Hammond High] was approximately 44.2 years. After the Board reconstituted the faculty, as of January 1, 2012, ... even though the average age would have increased to 45.2 in the absence of any changes, the average age actually decreased to approximately 41.8. This outcome means that the average age of teachers after the Board's reconstitution process was 3.4 years younger than expected. Also, instead of being approximately 19 years [younger] than Ms. Cefalu, the average teacher at [Hammond High] was more than 22 years younger than she was. It cannot be doubted that the Board's reconstitution process disproportionately affected older teachers and favored the hiring and retention of younger teachers at [Hammond High].

(Pl.'s Opp., Rec. Doc. 28, p. 13).

TPSB argues that Plaintiff has not met her burden because she has offered no statistical evidence to show a disparate impact on older faculty members; rather, Plaintiff has merely compared the average ages of teachers during two school years, assumed that the minimal difference in averages of 3.4 years was "not expected" and that it "disproportionately effected [sic] older teachers." (Def.'s Reply, Rec. Doc. 31, p. 10). According to TPSB, "Ms. Cefalu's own mathematical analysis of a single factor, without any comparison of the age ranges district wide, or changes in those ranges district-wide, has no probative value whatsoever." (Def.'s Reply, Rec. Doc. 31, p. 10). TPSB also points out that Plaintiff has failed to list any statistical data as exhibits and to name any expert witnesses, and that Plaintiff has missed the deadline for providing both. (Def.'s Reply, Rec. Doc. 31, p. 10).

Plaintiff also contends that she can meet "her burden of isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." (Pl.'s Opp., Rec. Doc. 28, p. 13) (citing *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)). Plaintiff alleges that the statistical disparity in her case was a result of "the subjectivity of the process," the fact that members of the evaluation team were younger than Plaintiff, and the fact that the evaluation team did not receive training regarding ways to avoid

age discrimination. (Pl.'s Opp., Rec. Doc. 28, p. 13). TPSB counters that Plaintiff has failed to point to a specific employment practice or policy because "[i]t is unclear whether she is alleging that the reconstitution itself created [a] disparate impact, whether the interview process at [Hammond High] created a disparate impact, or whether some other policy or practice allegedly created a disparate impact." (Def.'s Reply, Rec. Doc. 31, p. 9). TPSB also points out that Plaintiff has failed to show that TPSB was required to train its evaluation team to avoid age discrimination or assess the risk of disparate impact by age. (Def.'s Reply, Rec. Doc. 31, p. 9). Further, TPSB contends that the evidence suggests an entirely objective evaluation process, with the exception of the racial considerations required by the reconstitution order. (Def.'s Reply, Rec. Doc. 31, p. 9).

Plaintiff argues that if she is successful in showing a statistical disparity and identifying a specific employment practice responsible for that disparity, TPSB will not be able to assert the affirmative defense that its compliance with the reconstitution order constitutes a "reasonable factor other than age discrimination." (Pl.'s Opp., Rec. Doc. 28, p. 16). According to Plaintiff, the reconstitution order directed TPSB to consider age in its reconstitution decisions but did not authorize TPSB to disregard 29 U.S.C. § 623(a)(2) by engaging in age discrimination. (Pl.'s Opp., Rec. Doc. 28, p. 17). TPSB does not appear to address

8

this argument directly in its briefs.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.2d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). The Court will examine the evidence in the light most favorable to the nonmoving party. *Naquin v. Fluor Daniel Servs. Corp.*, 935 F. Supp. 847, 848 (E.D. La. 1996) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). While all reasonable inferences are drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.2d at 1075. A Court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come

9

forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

### DISCUSSION

#### A. Disparate Treatment

To establish a prima facie disparate treatment claim under the ADEA, a plaintiff must prove four elements: (1) that she is a member of the class that the ADEA protects; (2) that she was

qualified for the position; (3) that she suffered an adverse employment action; and (4) that she was replaced by someone younger. *See Vasquez v. El Paso County Cmty. Coll. Dist.*, 177 F. App'x 422, 424 (5th Cir. 2006). If the plaintiff can establish a prima facie case, the burden of production (but not of persuasion) shifts to the defendant to state a legitimate, nondiscriminatory reason for the adverse employment action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). To prevail, the plaintiff must then prove that the employer's stated reason is merely a pretext for age discrimination. *Id.* at 143.

This Court need not discuss the entirety of the burden-shifting analysis here because Plaintiff has failed to establish a prima facie case. Specifically, Plaintiff has failed to show that she suffered an adverse employment action.

To determine whether an action by an employer constitutes an adverse employment action,[1] this Court will use "the 'ultimate employment decision' test that [Fifth Circuit] precedents require: '[A]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'" *Watkins v. Paulsen*, 332 F. App'x 958, 959-60 (5th Cir. 2009). The Fifth Circuit has held that "[a]n employment

---

[1] Courts have used precedent regarding adverse employment actions for purposes of Title VII, the FMLA, the ADA, and First Amendment retaliation cases to determine whether an employer's action is an adverse employment action for purposes of the ADEA. *See Smith*, 544 U.S. at 240-41; *see also Hunt v. Rapides Healthcare Sys.*, L.L.C., 277 F.3d 757, 769-71 (5th Cir. 2001).

11

action that does not affect job duties, compensation, or benefits is not an adverse employment action under Title VII." *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (internal citations omitted). An employer's action may constitute an adverse employment action if it "makes the job objectively worse." *Hunt*, 277 F.3d at 770 (internal citations omitted). Additionally, "[a] job transfer that includes a shift change that involves changes in duties or compensation or can be objectively characterized as a demotion may be an adverse employment action. . . ." *Id.* (internal citations omitted). A transfer can be characterized as a demotion when it involves a transfer from a more prestigious position to a less prestigious one, particularly if the employer has traditionally used such transfers as a form of discipline or where the new position involves "*significantly different duties.*" *Id.* (citing *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996; *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir. 1992)) (emphasis added).[2]

---

[2] According to the *Hunt* court:

> In *Serna v. City of San Antonio*, ... the court ... held that a job transfer without an accompanying decrease in compensation or disciplinary action could not amount to an adverse employment action. ... In *Serna*, a police officer had been transferred from the downtown bike patrol to a regular patrol unit and his shift changed from the first night shift, ending at 2:00 a.m., to the second night shift, ending at 6:30 a.m. The employee showed that he, and some other officers, considered the bike unit more prestigious and desirable than the regular patrol unit, but he did not show that the new position was 'objectively worse.' ... [T]he employee in *Serna* did not present evidence that, viewed

To determine whether an adverse employment action occurred, courts should use an objective standard, and the plaintiff's subjective preference is irrelevant. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004) (internal citations omitted).[3] According to the Fifth Circuit:

> Circuit precedent establishes that in cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action.

*Id.* (internal citations omitted). The Fifth Circuit has also held:

> In order to overcome summary judgment, [the plaintiff] must show more than a mere lateral transfer; he must present sufficient evidence that the transfer ...

---

    objectively, the job transfer amounted to a form of discipline, a demotion, or a reduction in pay or benefits.

*Hunt*, 277 F.3d at 771 (citing *Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir. 2001)).

[3] *See also Hunt*, 277 F.3d at 771 ("An employee's preference for a particular shift is not sufficient. ... A plaintiff's subjective perception that a demotion occurred is not enough." (internal citations omitted)).

> 'involves changes in duties or compensation or can be objectively characterized as a demotion.'

*Id.* at 284 (citing *Hunt*, 277 F.3d at 770). A purely lateral transfer is one that "does not involve a demotion in form or substance" or that is "[a] transfer involving no reduction in pay and no more than a minor change in working conditions ... ." *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (citing *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)).

Here, although Plaintiff has historically taught chemistry, physics, and physical science at Hammond High, she is also certified to teach biology, and her employment contracts with TPSB have consistently stated that she has this certification. (Def.'s Reply, Rec. Doc. 31, SB Exh. "2"). TPSB has also consistently reserved the contractual right to reassign Plaintiff to different schools, grades, or subjects taught. (Def.'s Reply, Rec. Doc. 31, SB Exh. "2"). Plaintiff may not have taught a full biology class in several years. However, Plaintiff has brought no evidence that her job is objectively worse as a biology teacher, only that she has a subjective preference to teach chemistry and physics. Plaintiff's transfer to Ponchatoula High is hardly the type of transfer that constitutes a demotion because there is no evidence that the position at Ponchatoula High is any less prestigious than the

position at Hammond High or that Plaintiff's new job teaching biology involves duties that are *significantly* different from her duties as a chemistry and physics teacher.[4] Although Plaintiff alleges that teaching biology has "significantly affected her job duties," she offers the Court only this conclusory statement and does not provide evidence as to the manner in which her duties have been adversely affected. It is uncontested that Plaintiff's salary and benefits remained the same after she was transferred to Ponchatoula High. This is therefore merely a lateral transfer because Plaintiff's pay was not reduced, and she has experienced no

---

[4] Even if the Court found that Plaintiff's duties as a biology teacher are significantly different than her duties as a chemistry and physics teacher, there is no evidence that Plaintiff's job as a chemistry and physics teacher was objectively better. The Court is persuaded by Third Circuit precedent in *Swain v. City of Vineland*. In *Swain*, a police officer who was a sergeant in the street crimes unit was denied a promotion to become a sergeant in the K-9 unit. *Swain v. City of Vineland*, 457 F. App'x. 107, 108-09 (3rd Cir. 2012). The Third Circuit found that the employer's failure to promote the officer was not an adverse employment action, and thus that the plaintiff's ADEA claim failed, because plaintiff failed to bring evidence that "he was deprived of any serious and tangible alteration of his compensation, terms, conditions, or privileges of employment." *Id.* at 110 (internal citations omitted). The *Swain* plaintiff did not allege that his salary, benefits, or prestige would be changed by the promotion. *Id.* The Third Circuit found:

> Even if the responsibilities of a K-9 sergeant are 'significantly different' than those of a street crimes sergeant, ... there is no indication that these different responsibilities are objectively better (*e.g.*, more prestigious or less burdensome). ... Swain relies only upon his subjective preference for the K-9 position, which is insufficient to establish an adverse employment action.

*Id.* (internal citations omitted). *See also Vasquez*, 177 F. App'x at 423-24 (Fifth Circuit found no adverse employment action where Plaintiff was transferred between different departments at the same college – from the coordinator of inter-library loans to an assistant in the African Language Program).

15

more than a minor change in working conditions.[5] This Court agrees with TPSB's contention that:

> Ms. Cefalu provides absolutely no legal support for her contention that reassignment to teach a different subject matter within her area of certification constitutes an adverse employment action. The Board has no obligation to place any teacher according to their preferred subject matter, and the jurisprudence is clear that, as here, transferring a teacher to a different grade, school or subject, without loss of prestige, salary, or employment status, is not an adverse employment action.

(Def.'s Reply, Rec. Doc. 31, p. 3). Therefore, because Plaintiff has failed to make out a prima facie case, she cannot prevail under

---

[5] The Court's finding here is also supported by Eighth Circuit precedent. The Eighth Circuit has found that "minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not" constitute adverse employment actions. *Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). In *Spears*, the Eighth Circuit stated:

> [A] transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action. ... In *Montandon*, for example, we held that a transfer that required the plaintiff to move from one city to another was not actionable because the transfer did not entail a change in his salary, benefits, or any other aspect of his employment. [*See Montandon v. Farmlands Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997)]; *see also Hoffman v. Rubin*, 193 F.3d 959, 964 (8th Cir. 1999) (transfer from St. Paul to Chicago not adverse employment action because rank, pay, and other benefits were unaltered).

*Id.* at 853-54 (internal citations omitted).

a disparate treatment theory.

## B. Disparate Impact

A disparate impact theory is cognizable under the ADEA – specifically, under 29 U.S.C. § 623(a)(2). *Smith*, 544 U.S. at 240. To make out a prima facie case, the plaintiff-employee must show a statistical disparity by age. *See id.* at 243. Additionally,

> it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.

*Id.* (internal citations omitted).

Even if a plaintiff can show a statistical disparity and identify a specific employment practice responsible for that disparity, "the scope of disparate impact liability under ADEA is narrower than under Title VII" because an employer is not liable under the ADEA if the employer's action was "based on reasonable factors other than age discrimination." *Id.* at 238 (internal citations omitted). Thus, liability is precluded "if the adverse impact was attributable to a nonage factor that was reasonable." *Id.* at 239. The employer may still use the reasonableness defense

even if "there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class..." because "the reasonableness inquiry includes no such requirement." *Id.* at 243.

Assuming, without deciding, that Plaintiff has established a statistical disparity by age,[6] Plaintiff still fails to make out a prima facie case because she fails to allege a specific employment practice that is responsible for any alleged statistical disparity. For this reason, the Court need not discuss the affirmative defense based on reasonable factors other than age discrimination.

Plaintiff contends that she has identified a specific employment practice responsible for the statistical disparity because the evaluation process was "subjective," because members of the evaluation team were younger than Plaintiff, and because the evaluation team did not receive training to avoid age discrimination. However, while Plaintiff has opined that these

---

[6] To support her contention that the average age of the faculty decreased after the reconstitution, and that this constitutes a statistical disparity by age, Plaintiff attaches Exhibit "6" to her Opposition, which includes breakdowns of the Hammond High faculty during the 2010-2011 and 2011-2012 school years. These breakdowns fail to take into account any voluntary transfers, retirements, or any factors other than the reconstitution that may have caused faculty members to transfer in or out of Hammond High.

Although the Court need not resolve this issue here, Plaintiff has likely failed to establish a sufficient statistical disparity. The Court is persuaded by findings of the Sixth and Ninth Circuits in *Love* and *Adam*. *See Love v. Elec. Power Bd. of Chattanooga*, EPB, 392 F. App'x. 405, 409 (6th Cir. 2010) ("The chart Love filed to support this claim simply lists all employees who left [the Electric Power Board], regardless of whether they left voluntarily. ... this evidence fails to support a disparate impact on older ... employees ... ."); *see also Adam v. Kempthorne*, 292 F. App'x. 646, 652 (9th Cir. 2008) ("[W]e have been skeptical of statistical analyses that 'fail to account for other relevant variables' ... ." (internal citations omitted)).

factors are "responsible" for the statistical disparity she alleges, she offers no evidence of causation. Plaintiff has not provided evidence that the age of the evaluation team members was an employment *practice* or *policy* designed by TPSB or that any of the particular methods that the evaluation team used fell more harshly on faculty members of older age. Additionally, by alleging that TPSB failed to provide its evaluation team with age discrimination training, Plaintiff is merely pointing to a generalized policy of the TPSB (or to the lack of such a policy), not a specific employment practice. The Court's finding in this regard is supported by the Supreme Court's finding in *Smith*:

> [P]etitioners have done little more than point out that the pay plan at issue is relatively less generous to older workers than to younger workers. They have not identified any specific test, requirement, or practice within the pay plan that has an adverse impact on older workers. ... Their failure to identify the specific practice being challenged is the sort of omission that could "result in employers being potentially liable for the 'the myriad of innocent causes that may lead to statistical imbalances. ...'"

*Smith*, 544 U.S. at 241. Like the *Smith* petitioners, Plaintiff has

failed to identify any specific part of the reconstitution plan that adversely impacted older workers. Plaintiff has not alleged that any stage of the two-score procedure (awarding one score based on the interview and the other based on an objective rubric, and then adding the two scores together) was specifically responsible for creating a disparate impact by age. Therefore, Plaintiff has failed to make out a prima facie case, she cannot prevail under a disparate impact theory.

## CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant's Motion for Summary Judgment **(Rec. Doc. 27)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 20th day of September, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE